UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Harley-Davidson Credit Corp.

    v.         Civil No. 12-cv-374-LM
        Opinion No. 2014 DNH 258
RASair, LLC and
Mark B. Galvin

**O R D E R**

Harley-Davidson Credit Corporation ("Harley-Davidson") brought suit against RASair, LLC ("RASair") and Mark Galvin, alleging claims for breach of contract against both defendants. Default was entered against RASair, and the court granted in part Harley-Davidson's motion for summary judgment on its breach of contract claim against Galvin.[1] Galvin moves for reconsideration. Harley-Davidson objects.

Background

On April 24, 2008, RASair entered into a loan with Eaglemark Savings Bank ("Eaglemark") for $250,000, for the purpose of purchasing a Cessna 421C, bearing a manufacturer's serial number 421C0171, and a United States Registration mark N42ILW (the "Aircraft"). The loan was evidenced by an "Aircraft

---

[1] The court granted Harley-Davidson's motion for summary judgment to the extent it sought damages in the amount of $108,651.50, but denied the motion without prejudice to the extent it sought attorneys' fees and costs.

Secured Promissory Note" dated April 24, 2008 (the "Promissory Note").  As security for the loan, RASair granted to Eaglemark a first priority security interest in the Aircraft, including the Aircraft's airframe, engines, propellers, and record logs.  The security interest was evidenced by an "Aircraft Security Agreement," also dated April 24, 2008.  On the same day, Galvin executed an "Unconditional and Continuing Guaranty," in which he personally guaranteed RASair's performance under the Aircraft Security Agreement and the Promissory Note (the "Guaranty").  The court will refer to the Promissory Note, the Aircraft Security Agreement, and the Guaranty collectively as the "Loan Documents."

At some point, Eaglemark assigned the Promissory Note and the Aircraft Security Agreement to Harley-Davidson.  On approximately August 24, 2010, RASair defaulted on the Promissory Note by failing to pay the amount due.

On September 6, 2011, after several months of discussions with Galvin and in accordance with the terms of the Loan Documents, Harley-Davidson repossessed the Aircraft.  Immediately upon repossession, the Aircraft was placed in the custody of Specialty Aircraft Services, Incorporated ("SAS"), a dealer that specializes in the sale of repossessed and foreclosed aircraft.  SAS was tasked with selling the Aircraft,

2

and the proceeds of the sale were to be applied to RASair and Galvin's outstanding debt related to the Aircraft.

While in SAS's custody, the Aircraft's audio panel was vandalized. Harley-Davidson had Specialty Aircraft Leasing, Incorporated ("SAL") repair the audio panel and make several other repairs to improve the condition of the Aircraft.[2] SAL provided an invoice for its repair services, which indicated that the cost for repairing the audio panel was $2,000.

SAS subsequently sold the Aircraft in November of 2011 for $155,000. The proceeds of the sale, less expenses, were applied to the obligations owed under the Promissory Note to Harley-Davidson. Harley-Davidson asserted that the remaining balance owed is $108,681.50, which includes the expenses incurred to repair the Aircraft, other than the cost for repairing the audio panel which was not included. On December 14, 2011, Harley-Davidson mailed to RASair and Galvin letters for "Demand of Repayment of Deficiency." Neither RASair nor Galvin paid any of the remaining balance. This action followed, and default was entered against RASair.

Harley-Davidson moved for summary judgment on its breach of contract claim against Galvin. Galvin objected, arguing that the Aircraft was not sold in a commercially reasonable manner as

---

[2] It is unclear whether SAS is affiliated with SAL.

3

required under the Loan Documents and the Uniform Commercial Code.  In its order dated September 4, 2014, the court granted Harley-Davidson's motion, holding that "Galvin has raised no genuine issues of material fact concerning the commercial reasonableness of the disposition of the Aircraft."  Or. (doc. no. 45) at 19.

   Galvin moves for reconsideration of the court's order granting Harley-Davidson's motion for summary judgment.  Harley-Davidson objects.

### Standard of Review

In general, "motions for reconsideration are appropriate only in a limited number of circumstances . . . ."  United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).  Under the Local Rules in this district, "[a] motion to reconsider an interlocutory order of the court, meaning a motion other than one governed by Fed. R. Civ. P. 59 or 60, shall demonstrate that the order was based on a manifest error of fact or law."  L.R. 7.2(d).  "A manifest error is plain and undisputable, obvious, or clearly wrong."  McCarthy v. Weathervane Seafoods, No. 10-cv-395-JD, 2011 WL 2559527, at *1 (D.N.H. June 27, 2011).  "A motion for reconsideration does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented [previously]."

4

Fabrica de Muebles J.J. Alvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 6, 31 (1st Cir. 2012) (internal quotation marks omitted).

## Discussion

Galvin contends that the court's order granting summary judgment was based on a manifest error of law because it did not properly credit his affidavit. Galvin also argues that the court's order was based on factual errors, because the evidence in the record demonstrates that the sale of the Aircraft was commercially unreasonable.

A. Legal Error

Galvin contends that "[t]he Court applied an incorrect standard when it discounted the Defendant's affidavit as 'self-serving.'" Def.'s Mem. (doc. no. 49-1) at 2. Galvin concedes that his affidavit was self-serving, but argues that the court should have given it significant weight because it had adequate factual support in the record. Galvin contends that had the court properly considered his affidavit, it would not have granted Harley-Davidson's motion for summary judgment.

Although Galvin contends that the court discounted his affidavit because it was self-serving, that is not the case. In its order, the court cited Galvin's statement that based on his

5

"'experience in the aviation industry . . . lack of the[] avionics during showing and test flights could cause a difference in the sale price, to a retail buyer, equivalent to the difference between the [sic] what the buyer paid in this instance ($155,000) and the retail Blue Book value of over $269,000.'" Or. (doc. no. 45) at 10-11 (quoting Galvin Aff. (doc. no. 39-1) at ¶ 20). The court concluded that the affidavit was insufficient because it "does not provide a factual basis for those assertions . . . ." Id. at 11.

In his motion for reconsideration, Galvin contends that the value statement in his affidavit was supported by a Blue Book estimate of the price of the Aircraft, as well as eBay listings for the prices of the missing radio components.³ In its order, however, the court considered both the Blue Book estimate, see id. at 18-19, and the eBay listing, see id. at 10 & 12 n.7. As stated in the order, neither the Blue Book nor the eBay listing supported Galvin's contention that a material fact existed as to

---

³ It appears that certain radio components were missing from the Aircraft at the time it was sold. A footnote in the Aircraft Purchase Agreement states that the parties acknowledge that the Aircraft is missing three components, that Harley-Davidson will install the components within one week after the date of the Purchase Agreement, and that the buyer will have the opportunity to confirm that the components are operational after installation.

whether the Aircraft was sold in a commercially reasonable manner.[4]

Galvin also appears to contend that his experience in the aviation industry is a sufficient factual basis for the court to consider his affidavit as to the value of the Aircraft. The Federal Rules of Civil Procedure require the nonmoving party to 'set forth specific facts showing that there is no genuine issue for trial.'" Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). "The validity of a self-serving statement depends on whether the statement is based on firsthand experience or mere speculation. Uncorroborated testimony cannot serve to prevent summary judgment if the claim is based on speculation, intuition, or rumor, or is inherently implausible." Lusher v. Norfolk S. Ry. Co., 2:12-cv-37-TLS,

---

[4] Galvin also provided a chart in his objection to Harley-Davidson's motion for summary judgment, in which he purported to list the Blue Book "value of the Aircraft and several accessories and avionics which he appears to contend were installed on the Aircraft." Or. (doc. no. 45) at 18 (citing Def.'s Obj., Ex. B. (document 39-3) at 2). Galvin argues in his motion for reconsideration that the numbers in his chart were supported by a Blue Book page and an appraisal of the Aircraft done in 2008 for Harley-Davidson. In fact, however, the appraisal suggests that the Aircraft had lost over $21,000 of value by 2008 due to its high engine time, which Galvin omitted from his valuation. The Aircraft was sold three years later and Galvin did not discount the value based on the additional engine time. Even if Galvin's chart and supporting information properly supported his valuation, however, the chart would not change the court's analysis.

2014 WL 3894347, at *2 (N.D. Ind. Aug. 8, 2014); see also Payne, 337 F.3d at 773.

As stated in the order, "Galvin did not cite any examples where missing radio components at the time of purchase cause any diminution in the sales price of a plane." Or. (doc. no. 45) at 11 n.6. Galvin's statement, which relies on his general experience in the aviation industry without giving specific examples, is insufficient to defeat summary judgment. See Perez De La Cruz v. Crowley Towing and Transp. Co., 807 F.2d 1098, 1086-87 (1st Cir. 1986) (merchant seaman's statement based on his experience as to the location of the defendant's ship at the time of an accident was "composed of the gossamer threads of whimsy, speculation and conjecture which we have had held insufficient to defeat a properly supported motion for summary judgment").

More importantly, as the court noted, even if Galvin's statement as to the Aircraft's value could be credited, it would be insufficient to defeat Harley-Davidson's motion for summary judgment. As the court noted in its order, "Galvin states in his affidavit that the missing components 'could' cause a diminution in value of $100,000, and does not point to any evidence showing that the missing components would cause such a decrease in value or any decrease in value." Id. (emphasis added).

Therefore, Galvin has not shown that the court committed legal error when it held that Galvin's statement in his affidavit was insufficient to avoid summary judgment.

B. Factual Error

Galvin's remaining arguments suggest that the court made a factual error by misunderstanding the record evidence as to the Aircraft's value.  Galvin contends that had the court properly considered all the record evidence, it would have found that a genuine issue of material fact existed as to the commercial reasonableness of the sale.

Galvin's arguments as to the court's factual findings merely repeat his arguments in his objection to the motion for summary judgment.  He has not demonstrated that the court made a manifest factual error.

## Conclusion

For the foregoing reasons, the defendant's motion for reconsideration (doc. no. 49) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 15, 2014
cc:  Daniel C. Fleming, Esq.
     Mark B. Galvin, Esq.
     Kenneth D. Murphy, Esq.
     Mark W. Thompson, Esq.
     Micci J. Weiss, Esq.